FLORENCE I. REYNOLDS *vs.* FREEMASONS HALL COMPANY.

APRIL 20, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This is a petition under the Workmen's Compensation Act, brought by the widow of an employee of the respondent to recover compensation for the death of her husband.   After a hearing in the superior court, the petition was granted, a decree was entered accordingly, and the cause is before this court on the respondent's appeal from this decree.

Except for the conflict in medical testimony, the important facts are admitted or uncontradicted.   It appears in evidence that the petitioner's husband was employed by the respondent as a janitor in the Freemasons Hall.   On July 17, 1936, he was painting the kitchen in that building, the walls of which were fourteen or fifteen feet from floor to ceiling. To do the work, he had to use and did use a fifteen-foot extension ladder with regular sides and rungs.   He carried in his right hand a gallon or half gallon paint container on which there was a handle, and used the paint brush with his left hand.   The top of the ladder was placed against the wall and the bottom was secured against slipping by cleats on the floor.

He had finished two walls and a large portion of another, and had just begun the last section of that wall, having completed painting a strip at the top about nine inches down from the ceiling and near the top of the ladder.   A fellow workman had seen him previously that morning and testified that the employee worked on the walls from the top down.   The employee was a big man, weighing over two hun-

dred pounds, was a regular and conscientious workman, who did the work himself without asking or having any assistance.

Some five years previous to his death, he suffered injuries in an accident which left his right elbow and his side or right hip more or less stiffened. About one week before his death, the employee had fallen, while painting, from this ladder when the bottom of the ladder slipped because there were no cleats to hold it. This fall caused an injury to his left knee and back, the knee being somewhat stiffened at the time here in question. These injuries, according to the testimony, tended to unstabilize the employee in climbing or working on a ladder; but otherwise he was in general good health, there being no evidence of any complaint or treatment for any heart ailment or other illness. He had complained during the previous week of some nausea and headache caused by the combination of hot weather and paint fumes while he was painting.

He was apparently feeling well and was working as usual, in the course of his employment, during the morning when he was seen by a fellow workman. Some two or three hours later, about 12:30 p. m., he was found on the floor near the bottom of the ladder and not far from a radiator. His face rested in the spilled paint on the floor and apparently he was seriously injured, if not dead. The sides and rungs of the ladder, beginning about half way from the top and extending down to the bottom, were covered with fresh paint, as was the floor in the vicinity thereof. The paint container was toppled over and there was fresh paint on various parts of the employee's body and clothing from head to feet. His eyeglasses were broken, his false teeth were found on the floor in the paint, and there was a three-inch laceration on the top of his head and other bruises on the sides of his head, which required artificial treatment by the undertaker and his assistant.

The medical examiner, after visiting the scene, viewing the body and hearing certain of the evidence, filed a return giving as the cause of death the following: "Cerebral hemorrhage, chronic cardio vascular disease; fell from a ladder as result of shock *accident*." (italics ours)

The medical examiner explained his use of the word "accident" in the death return as intended by him to rule out any possible connection with homicide or suicide. It appears, however, that he had already crossed out the words "homicide" and "suicide", leaving the word "accident", where these three had appeared on the printed form as possible causes of death. He admitted that he had never made any examination of the employee's heart and that he did not perform an autopsy, but that he based his diagnosis of "chronic cardio vascular disease", appearing in the death return, on his assumption that the employee had suffered a spontaneous cerebral hemorrhage. According to his opinion and testimony, the employee's death resulted from a spontaneous cerebral hemorrhage which caused the fall.

On the contrary, the other medical expert in the case testified that the fall was a competent producing cause of the cerebral hemorrhage and that the death was due to a traumatic cerebral hemorrhage. According to his testimony, it was more logical from the evidence of the employee's death within three hours and from the other evidence, to believe that the employee had suffered a traumatic cerebral hemorrhage, because a person affected by a spontaneous cerebral hemorrhage usually lived much longer than three hours, possibly days, and did not necessarily die from such a hemorrhage.

His opinion was summed up by his answer that, in connection with the indications and other evidence in the case, he would say: "First that a fall in itself was a competent producing cause of death. Second that the fall was an exciting and contributing cause playing a significant role in the acceleration of death."

The medical examiner, though differing flatly with the conclusions of the other medical witness on the cause of the cerebral hemorrhage, did not deny that a traumatic cerebral hemorrhage could be the cause of death, and did not deny that the fall and blow on the head of the employee reasonably could be material factors contributing to and accelerating the death. He admitted that, if the employee fell from the ladder from dizziness of the head or because he lost his balance, the external injuries that he found would be consistent with the finding of a traumatic hemorrhage.

The trial court found upon the evidence that the employee died on July 17, 1936 by reason of personal injuries sustained by him by an accident arising out of and in the course of his employment as an employee of the respondent Freemasons Hall Company at its place of business at 127 Dorrance street, Providence, Rhode Island, through a fall from a ladder while painting on respondent's premises.

The respondent concedes that such findings of fact, in the absence of fraud, are conclusive in an original proceeding under this statute. G. L. 1923, chap. 92, art. III, sec. 6 as amended by P. L. 1928, chap. 1207. *Jillson* v. *Ross,* 38 R. I. 145; *Jacquinet* v. *Woonsocket Spinning Co.,* 52 R. I. 247; *Keith* v. *Narragansett Electric Co.,* 53 R. I. 160. No fraud is claimed or shown here. But the respondent contends that there is no legal evidence in the instant case to support such findings of fact.

The issue is thus narrowed and the sole question before us is whether there is any legal evidence in the transcript tending to support the findings of fact by the trial justice. It is further narrowed by the admission of the respondent that the employee fell in some way and that his fall and death arose out of and in the course of his employment, leaving only the question if there is evidence that such death was *accidental.*

It is true, as urged by the respondent, that there was no eyewitness, giving positive testimony directly describing the

actual fall and manner in which the employee met his death. It does not necessarily follow from such lack of testimony, however, that there is no evidence at all on the issue of the cause of his death, and that the determination here is left wholly to mere speculation and unwarranted inferences. There are other facts and circumstances properly established in the evidence by positive and uncontradicted testimony, in addition to the conflicting testimony of medical experts. If proper inferences are drawn from such established facts, such inferences constitute legal evidence and not mere speculation. See *Jillson* v. *Ross, supra.*

From our examination of the transcript, we are of the opinion that the trial justice was confronted with conflicting medical testimony which had to be considered together with all of the other facts in evidence and the fair inferences therefrom. Upon all of the evidence he had a choice of two conclusions, either of which was reasonable. The one is supported by the testimony of the medical examiner to the effect that the employee's fall and death were due to a spontaneous cerebral hemorrhage. The other conclusion is supported by the testimony of the other medical expert to the effect that the fall caused a traumatic cerebral hemorrhage and that such traumatic hemorrhage caused the employee's death or materially contributed to and accelerated it.

The trial justice apparently adopted the medical opinion favorable to the petitioner and found that the employee's fall was accidental and was a competent cause of a traumatic hemorrhage, resulting in his death. Considering the conflict in the medical testimony, together with all the evidence and legitimate inferences, we cannot say that there was no legal evidence tending to support the finding of fact by the trial justice. In these circumstances such findings become binding upon us by virtue of the statute and law above cited.

This conclusion is consistent with the definition of "accident" which appears in the case of *Gibbons* v. *United Electric Rys. Co.,* 48 R. I. 353, and with the principles of law ap-

plied in *Keith* v. *Narragansett Electric Co., supra,* as well as in cases in England and other jurisdictions in the United States. In our opinion the cases cited by the respondent are not authority for the extreme view for which it apparently contends and they are distinguishable, in any event, from the instant case on their peculiar facts.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed and the cause is remanded to the superior court for further proceedings.

*Leo M. Goldberg, Philip B. Goldberg,* for petitioner.

*Henry M. Boss,* for respondent.