MARGARET A. ENOS *vs.* INDUSTRIAL TRUST COMPANY.

MARCH 24, 1939.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

264

CAPOTOSTO, J.    This is an appeal by an employee of the respondent from a decree of the superior court denying and dismissing a petition for compensation under the workmen's compensation act, general laws 1923, chapter 92 and amendments thereto.

It is conceded by the respondent that the petitioner, a woman about forty-four years old, who was employed at night in cleaning offices in the respondent's building in the city of Providence, suffered an accidental injury in the course of her employment. The controlling question at issue is whether there is causal connection between that injury and the complaint she now makes.

The evidence shows that in her work the petitioner carried water in a large iron pail on three small wheels, the pail being pulled by her from place to place as required. On the evening of March 9, 1936, she opened a spring door that separated two offices, and, holding the door open with one hand, she backed through the doorway, pulling the pail after her with the other hand. Her testimony as to what happened while she was in this position is that "in lifting the pail over the threshold it had a tendency to slip and I had to let go of the door behind me and grab the pail with both hands, and as I did the door knob swung to, and struck me in the *left* side." (italics ours) This occurrence caused her faintness and vomiting, but, after a short rest, she did some light work for the rest of the evening. Thereafter she continued doing her regular work until June of that year.

The petitioner further testified that when she stopped work, some three months after the accident, she was suffering with pain in the lower back and that she then consulted

a Dr. Hale, who was not more definitely identified and who, according to the witness, had since gone to Texas. Doctor Hale strapped her back and advised that X rays be taken. This was done. She was also permitted to testify, without objection, that Dr. Hale found her back discolored and bruised when he first examined her, and that, following the taking of the X rays, he told her that her trouble was due to a displaced *right* kidney, that she needed an operation, and that in the meanwhile she should wear a belt to correct this condition as far as possible without operation.

The only medical testimony offered by the petitioner was that of Dr. William A. Mahoney, who examined her only once, on December 27, 1937, over twenty-one months after the date of the accidental injury. He testified that she complained of a dull ache in the *left* lower back, with sharp pain "from back to front in this region" when she moved; that in the course of his examination he palpated "a freely movable small mass" at the anterior end of the tenth rib on the *left* side, which mass was "probably the non-united cartilege attached to this rib"; and that the pain described by the petitioner traveled "backward from this point along the course of this rib." On being asked by petitioner's counsel whether the condition at the tenth rib was consistent with "having been caused by such a blow as the patient in her statement to you declared to be the cause?", his answer was: "I think it could happen that way", and, in cross-examination, admitted that "it is uncommon."

Doctor Mahoney knew that the X ray showed a displaced right kidney. Respondent's inquiry as to the probable cause of the petitioner's pain in the left lower back at the time of Dr. Mahoney's examination elicited the following testimony: "Q. You didn't attribute her pain or symptoms at that time to a misplaced right kidney? A. No. Q. You don't think there was any connection? A. I don't think there was any connection, but no one could tell that without a complete urological examination, which apparently never had been done."

The petitioner was examined in behalf of the respondent by Dr. William H. Palmer on July 13, 1936, some four months after the accident and more than seventeen months before Dr. Mahoney's examination. Doctor Palmer testified that at that time the only complaint made by the petitioner was of pain in the lower back on the left side; that he then made a complete physical examination; that palpation revealed no movable mass at the anterior portion of the left tenth rib, nor did the petitioner make any complaint of pain upon pressure in that region. He further testified positively that the X ray showed a displacement of the right kidney; that this condition had absolutely no causal connection with the accidental injury in question; that the soreness resulting from the blow that the petitioner received might persist for not more than ten or twelve weeks; that an injury to the anterior portion of the tenth rib would be a "most improbable" result of the accident, and that an injury to that "rib or its cartilege would not cause the pain, of the kind and location of the pain that she complained of at the time" he examined her.

The petition, which the petitioner signed, contains the following allegations in paragraph 9: "That the character and extent of said injury were as follows, *viz.*: Direct result was to cause soreness of flesh in region, (previously described in the petition as the region of the left kidney) black and blue condition, nausea of stomach and sickness of stomach and general weakness. Consequential result was displacement of kidney by 'dropping' thereof, continued soreness, weakness, general debility, loss of weight, nervous depression and partial invalidism."

At the conclusion of all the testimony the trial justice dismissed the petition and later filed a rescript in support of his decision. Thereafter, on June 1, 1938, a final decree was entered which included six findings of fact. They are in substance (1) that the petitioner did receive an accidental injury in the course of her employment; (2) that

she suffered a "more or less" severe contusion in the region of the left kidney, from the effects of which she recovered within three months; (3) that she was not totally nor partially incapacitated during that time; (4) that she had a displaced right kidney which condition was not a result of the accidental injury; (5) that the movable mass, about which she now complains, "did not appear until long after said injury and is not in any way related thereto"; and (6) that she "has not at any time been either totally or partially incapacitated as a result of said injury, and her present symptoms and incapacity to work, if such incapacity at present exists, are not in any way the result of said injury."

Questions respecting the credibility of witnesses or the weight of legal evidence are questions of fact and not of law. In the absence of fraud, findings of fact on legal evidence by the superior court are conclusive. G. L. 1923, chap. 92, art. III, sec. 6 as amended by P. L. 1928, chap. 1207. This court has consistently held that it would review such findings only where they were entirely without legal evidence to support them. *Jillson* v. *Ross,* 38 R. I. 145; *Reynolds* v. *Freemasons Hall Co.,* 60 R. I. 343, 198 A. 553; *LaPoint* v. *Pendleton,* 61 R. I. 121, 200 A. 464.

The petitioner argues that, with the exception of the finding that there was an accidental injury in the course of employment, the findings of fact by the trial justice are without legal evidence. This contention apparently proceeds on the theory that the petitioner, who claimed to have been in sound health before the accidental injury, was suffering from the consequential results of that injury, as Dr. Mahoney had related her condition at the time of his examination to that injury. If the testimony of Dr. Mahoney were the only testimony in the record before us, there would be considerable merit to her contention. But there is undisputed testimony of an abnormal physical condition of the petitioner, which was in no way connected with the accidental injury, and the further testimony of Dr. Palmer,

whose qualifications were admitted by the petitioner, to the effect that the accidental injury was not a competent cause of the petitioner's then claimed disability.

It is to be noted also that Dr. Mahoney's opinion was not without reservation. His testimony was that the condition which he found at the anterior portion of the petitioner's tenth rib was an uncommon consequence of the accidental injury described to him. Later, when he was asked in behalf of the respondent whether the pain described by the petitioner could be attributed to a misplaced right kidney, his answer was that he did not think there was any connection, "but no one could tell that without a complete urological examination, which apparently never had been done." He made no such examination.

From our examination of the testimony, it clearly appears that the trial justice was confronted with conflicting medical evidence from two physicians, whose ability and professional reputation were admitted by the parties, on the controlling question of causal connection. It was the duty of the trial justice to consider this conflicting medical testimony, together with all the other facts in evidence and reasonable inferences therefrom, not excluding the fact that in the petition itself the consequential injury claimed by the petitioner was a "dropped" kidney and not an injury of the kind she relied upon at the hearing in the superior court.

The provisions of G. L. 1923, chap. 92, art. III, sec. 2, require "setting forth . . . the cause, extent and character of the injury" in the petition for compensation. While it is true that the workmen's compensation act is a remedial statute and as such is ordinarily construed most favorably to the injured person, yet the employer is justly entitled to a reasonably fair statement of the extent and character of the injury for which compensation is claimed. In the instant cause the consequential disability relied upon at the hearing in the superior court is entirely different from the one alleged in the petition. The proof adduced by the petitioner

must have some reasonable relation to the allegations in the petition. This circumstance is one that the trial justice took into consideration in passing his judgment upon the weight of the conflicting medical testimony before him.

The petitioner further argues that the trial justice misconceived the rule of law which governs in weighing the evidence on the question of causal connection. She contends that his decision was arbitrary in requiring her to establish causal connection between her disability and the accidental injury to a certainty, and that this was an error of law which permits this court to review the evidence and draw its own conclusions. There might be merit to the contention, if the petitioner's interpretation of the rescript by the trial justice were correct. But a fair reading of that rescript does not warrant the conclusion that the petitioner urges.

The petitioner cites a number of authorities to the effect that probability and not the ultimate degree of certainty is the test whether injury resulted from the accident arising out of and in the course of employment. We find no reason to disagree with those authorities, but they are not pertinent in the circumstances of this cause.

In arguing the contention just above stated, the petitioner again stresses Dr. Mahoney's testimony as if it were the only medical testimony before the court. The trial justice, however, was confronted with two conflicting medical opinions as to the probable cause of the petitioner's then physical condition. In his considered judgment he determined that, under all the circumstances in evidence, the probability of the medical opinion adverse to the petitioner was greater than the one in her favor. In exercising his sound judgment as to which one of the two medical opinions he would follow in the circumstances before him, he was merely deciding whether the petitioner had proved causal connection between her then claimed disability and the accidental injury by a fair preponderance of the evidence; which she was bound to do in order to prevail. A similar

situation to the one in this cause was presented in *Reynolds v. Freemasons Hall Co., supra,* where, on conflicting medical testimony, the trial justice found for the petitioner and his decision was affirmed by this court.

A careful examination of the entire record in the instant cause shows that the findings of fact by the trial justice were based upon legal evidence, and that no error of law was committed by him in making those findings.

The petitioner's appeal is, therefore, dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Edward M. Sullivan, John J. Sullivan,* for petitioner.

*Haslam, Arnold & Sumpter, Harry A. Tuell,* for respondent.